4-20CV-807-P

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG - 3 2020

bb

CLERK, U.S. DISTRICT COURT
By_____
Deputy

Class action Lawsuit
UNDER Cruel AND UNUSUAL PUNISHMENT
& under Rule 23 and 23 (b) (2);
In Violation of Eighth Amendment

Comes Now, the representative party ruth Bahe
& Latoysha Gibson, > named parties in pro se form, in attempt
to vindicate both, their own legal rights and the rights
of others who are similarly situated ("unnamed class members).
The above named and unnamed class members are all
located at Federal Correctional Institution, FMC Carswell
in Fort Worth, Texas, Placing Jurisdiction with the
Northern District Court. The district court holding
Jurisdiction over "all civil actions arising under the
Constitution, Laws, or Treaties of the United States.

Facts

The Plaintiff's have standing to sue due to the
defendant's conduct has caused actual jurys and or
or threatens. Therefore, since a favorable court
decision will likly reduriss their jury. The harm need
not be physical or economic. The deprivation of a
statute right can confer.
The Plaintiff's will SHOW that as a class they
meet the other prerequistits for a class action
as listed in Rule 23(a), Fed. R. Civ. P.
(1) The class must be so numerous that
joinder of all class members is impracticable.



To meet this requirement, the class need not be enormous in number. Stewart V. Abraham, 275 F.3d 220, 226-27 (3d. cir. 2001) ("no minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiff's exceeds 40, the first prong of Rule 23(a) has been met"). Cypress V. Newport News General & Nonsectarian Hospital Assn., 375 F.2d 648, 653 (4th cir. 1976)(class of 18); Amone V. Aveiro, 226 F.R.D. 667, 684 (D. Haw. 2005)(class of 40); Clark V. Coughlin, 145 F.R.D. 339, 347-48 (S.D.N.Y. 1993)(certifying class of deaf prisoners, with male subclass of 49 and female subclass of at least seven); Ikonen V. Hartz Mountain Corp., 122 F.R.D. 258, 262 (S.D. Cal. 1988)("As a general rule, classes of 20 are too small, classes of 20-40 may or may not be big enough... and classes of 40 or more are numerous enough").

Here the Plaintiff's in this class action reach the number of 54 named and a undetermined number of unnamed to join later, meeting the number one prequist for becoming a class action. As it is not necessary to prove the size of the class with precision as long as there is some basis for a reasonable estimate. See U.S. ex rel. Sero V. Preiser, 506 F.2d 1115, 1126 (2nd cir. 1974)("Because, many of those serving reformatory sentences are likely to be illiterate or poorly educated, and since most would not have the benefit of counsel to prepare habeas corpus petitions, it is not improbable that more than a few would otherwise



never receive the relief here sought on their behalf.")

Skinner v. Uphoff, 209 F.R.D. 484, 488 (D. Wyo. 2002); Nicholson v. Williams, 205 F.R.D. 92, 98 (E.D.N.Y. 2001); Christina A. ex rel. Jennifer A v. Bloomberg, 197 F.R.D. 664, 667 (D.S.D. 2000); San Antonio Hispanic Police Officers' Organization v. City of San Antonio, 188 F.R.D. 433, 442 (W.D. Tex 1999); Dean v. Coughlin, 107 F.R.D. 331, 331 (S.D.N.Y 1985) Arrango v. Ward, 103 F.R.D. 638, 640 (S.D.N.Y. 1984); Powell v. Ward, 487 F. Supp. 917, 921-22 (S.D.N.Y. 1980), aff'd as modified, 643 F.2d 924 (2d cir 1981); see Gerstein v. Pugh, 420 U.S. 103, 110-11 n. 11, 95 S. Ct 854 (1975).

In cases involving fulid classes and this class would be, classes are often certified to include future as well as present members. See, e.g., Weitoner v. Hawkins, 208 F.R.D. 301, 318-19 (D. Colo. 2002); Jones 'EL v. Berge, 172 F. Supp. 2d 1128, 1131 (W.D. Wis. 2001)

Even if future class members are not included in the class definition, those individuals will benefit from any relief that is granted when they become class members. Bromiller v. Cleveland Psychiatric Institue, 898 F. Supp. 572, 579 (N.D. Ohio 1995).

(2) There must be questions of law or fact common to the class members and you. All class members have met this requirement by having one or more common issues of law or fact as to all or most of the class members. See all Declarations provided as fact and evidence that all class members have one or more common issues, including but not limited to being covID-19 positive.



(3) The claims or defenes of the representative parties must be typical of the claims or defenses of the other class members, as Rule 23(a)(3), Fed. R. Civ. P. The Class request to allow new class members to join at a later date, due to many have not beenable to be made contact with to request their wishes. The fact that some class members might choose not to assert their rights does not mean that the named plaintiffs' claims are not typical nor does the existence of other factual variations. Wilder V. Bernstein, 499 F. Supp. 980, 993 (S.D.N.Y. 1980); Cicero V. Olgiati, 410 F. Supp. 1080, 1098 (S.D.N.Y 1976). Armstrong V. Davis, 275 F.3d 849, 868 (9th cir. 2001)(claims of prisoners complaining of prison and parole authorites' failure to accommodate their disabilities were typical even though they had different disabilities); Baby Neal V. Casey, 43 F.3d 48, 55 (3d cir. 1994) ("... Classes challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typically requirement irrespective of the varying fact patterns underlying the individual claims."); Hassine V. Jeffes, 846 F.2d 169, 177 (3d. cir. 1988)(named plaintiffs could have "typical" claims without asserting "precisely the same" injuries as other class members); Berry V. Baca, 226 F.R.D. 398, 404-05 (C.D. Cal. 2005).

Clearly the named parties in the above styled class action are being violated, placed in risk, and danger, suffering and will continue to suffer greatly. And all share in their 1st, 4th, 6th, 8th, 13th and 14th constitutional amendments being violated together, see



Each Declaration by each named class member.

(4) The representative parties must fairly and adequately protect the interest of the class, per Rule 23(a)(4), Fed. R. Civ. P., "meaning the class representive has a common interest with unnamed class members and will vigorously prosecute the interests of the class through qualified counsel".

The "common interest" prong means that the court will consider whether you have any conflicts of interest with other class members that would prevent you from being able to represent them fairly. If the defendant's wish to argue that the named plaintiffs in prison and other kinds of civil rights litigation are not adequate representatives because they have criminal records, suffer from mental illness, etc. Courts have rejected this argument, pointing out that if they accepted it, whole classes of plaintiffs would be barred from class action litigation. Ingles V. City of New York, 2003 WL 402,565, *6-7 (S.D.N.Y., Feb. 20, 2003); Daniels V. City of New York, 198 F.R.D. 409, 418-19 (S.D.N.Y. 2001) (citing Same B. by Martin V. New York City Dep't of Soc. Serves, 117 F.R.D. 64, 71 (S.D.N.Y. 1987) Weiberger V. Hawkins, 208 F.R.D. 301 (D. Colo. 2002).

The "qualified counsel" requirement has generally been construed to mean that counsel must have a reasonable amount of experience relevant to the proposed class action. See Bynum V. District of Columbia, 217 F.R.D. 43, 47 (D.D.C. 2003); Daniels V. City of New York, 198 F.R.D. 409, 418 (S.D.N.Y. 2001).



The rule now spell this out: courts are supposed to appoint (i.e. approve) class counsel, based on the work they have done in investigating the case; their experience in handling class actions, other complex litigation, and the types of claims in the case; their knowledge of the applicable law; the resources they will commit to representing the class; and any other factors relevant to their ability to fairly and adequately represent the class.

Understanding that Courts are generally unwilling to assume that a pro se prisoner is capable of representing other prisoners' interest as well as her own. (Graham V. Perez, 121 F. Supp. 2d 317, 321 (S.D.N.Y. 2000)("[I]t is well settled in this circuit that pro se plaintiffs cannot act as class representatives" because they do not satisfy the requirements of Rule 23(a)(4)(citation omitted)); Maldonado V. Terhune, 28 F. Supp. 2d 284, 288 (D.N.J. 1998)(holding that pro se prisoners are "inadequate to represent the interests of his fellow inmates in a class action"); Allnew V. City of Duluth, 983 F. Supp. 825, 830 (D. Minn. 1997) and cases cited.

Therefore the plaintiffs in above styled class action request this honorable Court to Appoint Counsel due to the complex nature of a class action with a pro se in representation. The complexity ought to support appointment of counsel. See Wilson V. Coughlin, 670 F. Supp. 1186, 191 (S.D.N.Y. 1987). See attached motion.

In addition to the requirements of Rule 23(a), a class



action seeking injunctive relief are generally certified under 23(b)(2), which requires that it is show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Courts have said that Rule 23(b)(2) certification is "particularly appropriate in the prison litigation context where only injunctive and declaratory relief are sought."

But, as these plaintiffs are moving for damages for the class, the case generally must be certified under Rule 23(b)(3), which requires the court to find that common questions "predominate" over questions affecting only individuals and that a class action is "superior" to other methods of handling the controversy. See Kerr v. City of West Palm Beach, 875 F.2d 1546, 1557-58 (11th cir. 1989)(upholding denial of class certification in police misconduct damages case); McBean v. City of New York, 228 F.R.D. 487, 503 (S.D.N.Y. 2005)(finding class action superior method of handling class action about strip searches of arrestees).

See In re Visa Check, 280 F.3d 124, 141 (2nd cir. 2001)(citation omitted);

There are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages



proceedings; (3) decertifying the class after the
liability trial and providing notice to class members
concerning how they may proceed to prove damages;
(4) creating subclasses; or (5) altering or amending
the class. Bertulli V. Indep. Ass'n of Cont'l Pilots,
242 F.3d 290, 298 (5th cir. 2001)(affirming district court's
determination that common issues predominated because
"although calculating damages will require some
individualized determinations, it appears virtually
every issue prior to damages is a common issue".)

    All the named Class Members in this class
action have provided Declarations of Verifications
swearing to the Constitutional violations, cruelty,
abuse, Threats, and Humilations that have been and
continue to be visited upon them every day. Everyone
of the named class members has tested positive for
Covid-19 and is a mere fraction of the fragle
outbreak.     that Carswell's Warden and named
defendants permitted to take over. Each one of the named
class members are all of one housing unit known as 2
North, and are not the hospital unit as FMC would like
the public to assume.
    Our World is in a Pandemic and the CDC
has placed guide lines for ALL, Would it become this
Courts Finding that only "free Americans" are worthy of
being afforded the rights to self-care and protect
from a virus that kills all ages? This Classes
8th amendment rights have been and are being violated.
While the public only hears the side of a major



business (BOP) (Fmc Carswell) The forgotten
lives of mothers, daughters, grandmas, grand daughters,
sisters all live against every CDC guideline.
    Are forced to become COVID-19 positive.
Masks made of cloth, CDC says "will not protect."
No Hygines provided nor can the class members
and all of Fmc Carswell shop for themselfs to
buy hygine products. CDC says keep hands washed
Hygine a major risk factor. Soap in bathrooms is
50% watered down, and class did not have any
soap for a week solid, while counselor Burderher
stated, " "So, I look like I am worried about you
all having Soap!"
CDC says social distancing is vital. Warden
Carr along with defendants have taken photographers
of the numbers above our cell openings (there are
no doors) to show that rooms are numbered as
such "123-124" leaving the readers to think that
this consist of two rooms. Facts are very different
however, that is realy a 8x7 space and holds
2 bunk beds = 4 people, less than 3½ feet from
one another. The housing unit is open and bathroom
is shared, no possible way to social distance.
    But, seeing that we are told, "you die or make it
doesn't matter to me." By staff daily I would say
FACTUALY and CLEARLY these defendants do not
care what is happening to us (the class). See
all Declaration Verifiedtion for more hile.



The staff blames the inmates for bringing in the COVID-19. If you look at the last person before the mass outbreak to test positive, it was in fact a staff member (Babiwhite).

Us women have been degraded, abused, for long periods of time with no end in sight now add the fear and stress that we are truely fighting for our lives. It's been reported that if you heal from one strand of COVID-19, and get another the risk are even higher of death. Warden Carr and Lux have stated in housing unit, "We will not be moving anyone who test negitive, you have to ride this out we have no where to put you inmates".

So you leave a person who tests negitive with no self-care or protection with over 100 positives and sit back and wait for that negitive to become positive with a new strand that will heighten her chances of death? That is not what we were sentenced to.

A prisoner must be provided with, "shelter which does not cause her degeneration or threaten her mental and physical well being". Carty v. Farrelly, 957 F.Supp. 727, 736 (D.V.I. 1997) ("the state of disrepair of the facilities (including plumbing, heating, ventilation, and showers) and the effect that substandard condition have on the inmates' sanitation and health informs whether the prison provides an inhabitable shelter for Eighth Amendment purposes".)



Some courts have held that if overcrowding results in unacceptable conditions, those conditions, and not the overcrowding itself, should be remedied. That approach has been adopted in the Prison Litigation Reform Act, which provides that a "prisoner release order" (any order that limits or reduces prison population or directs release or nonadmission of prisoners) may be granted only after "less intrusive" relief has been tried and has failed to eliminate the constitutional violation. 18 U.S.C. § 3626(a)(3) Coleman V. Schwarzenegger, 2009 WL 2430820 (E.D Cal. 2009)

Here now we have a silent killer moving through time through at the highest rapid rate as of yet inside the BOP. There is zero way to protect us as we are all already one with COVID-19. we don't warn us the have, we do not wait are or think we may die once we are self care and then it is too late. Our Ventilation is connected to other units and they are also COVID-19 positive (but not all) So we are forced to share dirty ventilation.

## Sanitation and Personal Hygine

"A sanitary environment is a basic human need that a penal Institution must provide for all inmates".
Now more than ever this is important. Staff post signs and photographer said signs about cleaning and washing hands, etc. But they tell inmate orderlies to water down by 50% the soap and cleaners.

12

During this pandemic 2 North (class members) begged for soap to warden, counselor, and emailed deposits about the food we had none. A CO from another housing unit came over to talk to our CO and saw we had no soap and went back to his unit and returned with it. (note no PPE on staff at this time)

Camera's will show evidence, staff would not wear any PPE while working here until a week before July 1st 2020. Also see we can't buy soap, tampons, hygine, food all things we have been without by the staff ... but warden Ault has taken all of our shoping away for over 3 weeks. So we are not provided and can not buy.

Food

"Food is one of the basic necessities of life protected by the Eighth Amendment". Knoop V. Johnson, 667 F.Supp. 512, 525 (W.D. Mich. 1987), aff'd in pertinent part, 977 F.2d 996, 1000 (6th cir. 1992); accord keenan V. Hall, 83 F.3d 1083, 1091 (9th cir. 1996), amended, 135 F.3d 1318 (9th cir. 1998)

The Supreme Court has identifed deprivation of food to a suspect in custody as a type of "physical punishment" that can render a confesion "involuntary". Schneckloth V. Bustamonte, 412. U.S. 218, 226, 93 S.Ct. 2041 (1973). Keenan V. Hall, 83 F.3d at 1091 (prison food must be "adequate to maintain health"); Antonelli V. Sheahan, 81 F.3d 1422, 1432 (7th cir. 1996); Hazen V. Pasley, 768 F.2d 226, 228 n.2 (8th cir. 1985)(diet causing "notable weight loss and mildly diminished health" was

13

unconditional.) Rust v. Grammer, 858 F.2d 411, 414 (8th cir. 1988) (upholding sandwich diet during lock down, but noting that "a diet, such as this one, without fruits and vegetables might violate the Eighth Amendment" if it were a regular prison diet").

TMC Carswell has fed us for over 20 days old cereal, sandwiches (8-10) slices of bread a day, sandwich meats that are old with mold and rotten fruits once in a while. One of the Lt.'s Rodeguize emailed the warden over how nasty our food was and the response te said email was "I'm positive".

Kitchen staff has refused to prepare any baloney a few days ago and food was raw. They (kitchen staff) stated, "It's not our jobs to cook for you). They may not have to meet "free world standards", but while our bodies fight and our immune systems fight, raw, rotten foods are working us even more allowing Covid-19 more leeway.

Medical Care

"Please See all Declarations of Verifications"

Medical has no concern and does not wish to treat anyone or Covid-19, "if you didn't want to suffer don't come to jail!" "Ride it out!" fevers, pain, headaches,

throwing up, loose bows, and more. And during
this pandemic we are stilled charged a fee to go be
seen at sick call, to be told you have allergies
when we have positive test for COVID.

Before any of the Plaintiffs were tested for COVID-19
they presented with symtoms, the same actions
were taken, "you have allegues go back" no vitals
no care. and that has promoted the Failure to stop
A outbreak in the Kibt. The Deliberate Indifference,
The would finds COVID-19 to be a serious medical
need. The Supreme Court has stated "deliberate
indifference to serious medical needs of prisoners
constitues the "unnecessary and wanton infliction
of pain ... prohibited by the Eighth Amendment.
Estelle V. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285
(1976); See Erickson V. Pardus, 551 U.S. 89, 94, 127
S.Ct. 2197 (2007).


Infectious Diseases: Prisons officials have
an obligation to protect prisoners from the Risk of
infectious diseases. Jolly V. Coughlin, 76 F.3d 468, 477
(2d. Cir. 1996); see Helling V. McKinney, 509 U.S.
25, 33, 113 S.Ct. 2475 (1993) (citing cases condemning
the failure to separate prisoners with contagious
diseases from others).

Plaintiffs have not been separated from known
positive contagious COVID-19 inmates.
And are now told "we won't be".

DeGidio V. Pung, 704 F. Supp. 922, 937-51, 956

-59 (p. mim. 1989) deliberate indifference was shown by persistent failure to respond to the obvious complaints and symptoms of the first case, the failure to advise inmates of their exposure, the failure to develop a policy, and protocol and the failure of administrators, Health Department, or physicians to take responsibility, the failure to test All inmates when they tested all staff, and leaving primary education to a laboratory technician).

This above case has all the failures of Fmc Carswell, yet Fmc Carswell has women dieing and anyone with Covid-19 has no promise it will not kill them, and if you were to contract Covid-19 twice because you can not practice any self-care or social distancing then your odds climb. So we Indure this treatment simply because we are inmates? Do our lives hold no value? We MUST bring this to this honorable Court, because we know the answers, Since the staff named in this class action do not mind showing us and telling us no one gives a damn.

## 4th Amendment Violations

"When prison officals maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated," unless the force is "de minimis" (minimal). But even de minimis force may be unconstitutional if it is "repugnant to the conscience of mankind." Hudson V. McMillian, 503 u.s. at 9-10; see

U.S. Walsh, 194 F.3d 37, 50 (2d cir. 1997)(conduct of officer who required mentally ill prisoner to let him step on the prisoner's penis before giving him a cigarette was "repugant to the conscience of mankind"); Laury V. Greenfield, 87 F. Supp. 2d 1210, 1217 (D. Kan. 2000)(assault with no penelogial justification, is repugnant; plaintiff alleged he was assaulted after reporting staff misconduct).

Pelfrey V. Chambers, 43 F.3d 1034, 1037 (6th cir. 1995) (allegation that officers forcibly cut off the plaintiff's hair with a knife stated an Eighth Amendment claim; actions seemed "designed to frighten and degrade"); Felix V. McCarthy, 939 F. 2d 699, 701-02 (9th cir. 1991)(throwing a prisoner across hallway into a wall without reason violated Eighth Amendment); Campell V. Grammer, 889 F. 2d 797, 802 (8th cir. 1989)(completely unjustified spraying with fire hose violated Eighth Amendment).

Justification for Use of Force: Force may be used to restore or maintain order in a jail or prison - not to punish prisoners or to retaliate against them. Keeping order does not mean that once a prisoner has misbehaved, anything goes; force that is unnecessary, or excessive to the need, may still be unconstitutional.

See all Declarations provided. Here also is a outline of Lt. Rodeguize's comments to inmates Blake, Gibson, Snaygrass after Lt. Anatheys and Lt. Butlers Unjustifiable force, Threats, and over all malicious and sadistic attack upon Housing Unit 2 North, due to ladies needed to use the bathroom after over 3 hour Count with "no disturbance" of any kind. Women were already

in their cells, minus few still going to bathroom.

Of Roduiez stated, "I am very sorry ladies for what happened to you all. I have viewed the video 5 times and there was no fighting, no arguements and he was never to come in here with a weapon (eg. black scary gun) and brandish it all over and then charge into a cell and he looked to be pointing the firearm at the ladies." The class members request this Court to appoint counsel and to view video of July 1st 6:05 pm.

Since, verbal threats of force may be unconstitutional in extreme cases usually involving plausible threats of death or injury, or where they are in retaliation for constitutional protected conduct.

One court has held that the use of racial slurs with such frequency that they create in "atmosphere of racial harassment" violates the constitution, but the appeals court held that supervisory officials could not be held responsible unless they actually encouraged this conduct, Knop V. Johnson, 667 F. Supp. 467, 505-08 (W.D. Mich. 1987), rev'd in pertinent part, 977 F. 2d 996, 1014 (6th Cir. 1992).

Verbal abuse may be an aggravating factor where physical abuse is also established, and it may help prove malicious intent or unreasonableness of the force used.

Of. Anthony screamed over and over while branishing and pointing the firearm, "come on cows come get some, God please one have balls... Were



are you balls?" "Go pee and get shot, try me please!"
The other officers that were present and highier
powers, only stood by while this Abuse and Excessive
force was being conducted.
Rendell V. Prince George's County md., 302
F. 3d, 188, 203-04 (4th cir. 2002); Mick V. Brewer,
76 F. 3d 1127, 1136 (10th cir. 1996); Anderson V. Branen,
17 F. 3d 552, 557 (2nd cir. 1994); Bruner V. Dunaway,
684 F.2d 422, 425-26 (6th cir. 1982); Harris V. Chanclor,
637 F.2d 203, 206 (5th cir. 1976); Byrd V. Brishke, 466
F.2d 6, 11 (7th cir. 1972); Thomas V. Frederick, 766
F. Supp. 540, 555 (W.D. La. 1991); see U.S. V.
Serrata, 425 F. 3d 886, 895-96 (10th cir. 2005) (affirming
officer's criminal conviction of civil rights violation
for failing to intervene). When these officials made
the choices that they did and followed their misconduct
and indifference up with false statements on "Town
Hall" print outs (which are Exhibit A) then choose to
repeatingly come back into the Two North Housing
Unit to cause fear and making annocements such as:
But not limited to: (1) "Which Bitch goes with me today to
     the SHU?" Lt. Anthony
     (2) "I do not speak to your kind!" Lt. Bulter
     to class member Blake.
     (3) "Cows... guess that explains why you
     look the way you do!" Lt. Anthony
     (4) "I don't give a Fuck if your sick,
     you make me sick bitches". Lt. Bulter

(5) "Thank God you are no longer a mother to your kids, but shit maybe they'll meet you here." Lt. Anthony

(6) "Hey Retards" Counselor Gardner

(7) "You contact regional, they fax it to me to do as I please to you, and I will!" Mrs. Cole-Rowls (Unit Team)

(8) "You have no fucking rights!" Lt. Butler

(9) "I'm not giving you any 8½'s or 9's till you tell who it is on and why and I still may not if I don't agree with you." Mrs. Cole-Rowls

e.g. many many more

Environmental Hazards, Exposing prisoners to dangerous conditions or toxic substances may also violate the Constitution. Helling V. Mckinney, 509 U.S. 25, 35, 113 S.Ct. 2475 (1993)(Eighth Amendment bars exposure, with deliberate indifference, to conditions "that pose an unreasonable risk of serious damage to [the Plaintiff's] future health"); Jackson V. State of Arizona, 885 F.2d 639, 641 (9th cir. 1989)(allegations of polluted water stated an Eighth Amendment claim); Davis V. Stanley, 740 F. Supp. 815, 817-18 (N.D. Ala. 1987)(allegations that deputies engaged in a high-speed chase while transporting the plaintiff between jails did not state a constitutional claim).

We were offered no truths about COVID-19 spread until the news covered the heart breaking story

of the 30 year old woman who was carring her unborn daughter died after she was kept here with fevers and the world news of the pandemic. So it was purely Indifference on the officials here at FMC Carswell. Her daughter was forced to come into this world early and her loving mother passed away, never to kiss or hold her baby girl.

Now as of July 23rd, 2020 the outbreak after the last person tested positive allowing Carswell in braging rights as the officials, "that we at Carswell are clean of all Covid-19 and it is our fault if we get sick, and my child needs me, you're already gone from yours, I'll leave and let you damn inmates figure it out, because I'm needed."

Staff has cut all our local news channels, to prevent any inmate gaining knowledge of what they are saying to the public and the amount of very sick and all inmates are at sick.

If the Warden and officials had been honest with us about the amounts the risk they have us living with and how many are sick, Instead of giving out gone, dousing, threatening and taunting the female inmates.

Unlike the males prison in Dallas... FMC Carswell has not allowed any inmates to go outside in almost 4 weeks, zero fresh air, zero sunshine, zero exercise or programming. The males even positive Covid-19 go outside per CDC, two hot meals a day, zero restrictions on commissary, and they have their programs. The women are not treated equally nor protected equally.

Exercise is one of the basic human needs that prisons officials must provide for under the Eighth Amendment. Wilson V. Seiter, 501 U.S. 294, 304, 114 S.Ct. 2321 (1991). "Given current norms, exercise is no longer considered an optional form of recreation, but is instead a necessary requirement for physical and mental well-being. Delaney V. De'Tella, 256 F.3d 679, 683 (7th cir. 2001); accord, Perkins V. Kansas, Dep't of Corrections, 165 F.3d 803, 810 (10th cir. 1999) ("some form of regular outdoor exercise is extremely important to the psychological and physical well being of inmates")); Dawson V. Kendrick, 527 F.Supp. 1252, 1398 (S.D.W.Va. 1981) ("undue restrictions on prisoners' opportunites for physical exercise may constitue cruel and unusal punishment in violation of the Eighth Amendment when they pose an unreasonable threat to the prisoners' physical and mental health.") Gilland V. Owens, 718 F.Supp. 665 (W.D.Tenn. 1989) (crowding and lack of staff do not provide penological justification for lack of exercise).

The Plaintiffs have been locked inside their unit in their cells (with no doors) for over 3 months.

So, we suffer from Abuse, Threats, Taunts, Food with mold, no commissary, no hygiines, zero outdoors or exercise, no exercise pumitted in our cells or unit, per warden Carr, Cole-Pauls, Gardener, medical never around, won't answer our questions same doctors such as Dr. Sawdy call us fat and tell us to "not drink water", our legal mail sorcives means you give them

The Eighth Amendment, which forbids "cruel and unsaul punishments," governs the treatment of convicted prisoners. This CLASS SHOWS CAUSE by the "objective component", which shows the seriousness of the challaged conditions and the "subjective component" which the CLASS has offered evidence of the state of mind of the officals who are responsible for them.

The violation to this CLASSES Eighth Amendment rights have amounted to the unnecessary wanton infliction of pain. In respect to the CLASSES living conditions being unquestioned and serious deprivations of basic Human needs and the minimal civilized measure of life's necessities. As the United States Supreme Court has listed as basic human needs which has been listed as "food, clothing, shelter, medical care and reasonable safety."

See Cases: Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994); Wilson v. Seiter, 501 US. 294, 298, 111 S.Ct. 2321 (1991). Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct 2392 (1981).

Rhodes v. Chapman, 452 U.S. at 347; Wilson v. Seiter, 501 U.S. at 297

Helling v. Mckinney, 509 U.S. 25, 32, 113 S.Ct. 2475 (1993) (citing DeShaney v. Winnebago County Dept's of Social Services, 489 U.S. 189, 199-200, 109 S.Ct. 998 (1989)). "Shelter" includes various aspects of physical conditions including lighting, ventilation, and structural deterioration.

*In this pandemic, The Court could apply to all Human Beings, even prisoners; These plaintiffs can show strong their their 'deprivation of basic elements of hygiene' No soap, No toilet, No tissues, No proper mask*

Palmer v. Johnson, 193 F.3d 346, 352 (5th cir. 1999) (quoting Novak v. Beto, 453 F.2d 661, 663 (5th cir. 1971)) (holding denial of toilet facilities for many inmates in a small area would be a "deprivation of basic elements of hygiene" violating the Eighth Amendment); Carver v. Bunch, 946 F.2d 451, 452 (6th cir. 1991); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th cir. 1982); Wolfish v. Levi, 573 F.2d 118, 125 (2d cir. 1978), rev'd on other grounds subnom, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861 (1979); Newman v. Alabama, 559 F.2d 283, 291 (5th cir. 1978).

*Lt. Anthony Butter    Gardem we called things we are called ms. scott*

Hudson v. Palmer, 1168 U.S. 517, 530, 104 S.Ct. 3194 (1984); see Whitman v. Wesie, 368 F.3d 931, 934 (7th cir. 2004)(equating "calculated harassment" to searches "maliciously motivated, unrelated to institutional security, and hence 'totally without penological justification'" (citation omitted)); Harper v. Showers, 174 F.3d 716, 720 (5th cir. 1999)(holding allegation of frequent searches for no purpose but to harass was not frivolous).

Parrish v. Johnson, 800 F.2d 600, 604 (6th cir. 1986) (holding that an officer's waving of a knife in a paraplegic prisoner's face, knife-pointed extortion of potato chips and cookies, incessant taunting, and failure to relay requests for medical care to the nurses violated the Eighth Amendment.

Helling v. McKinney, 509 U.S. 25, 33, 113 S.Ct.



(" See fla,
we have
already safe)

2475 (1993)), ("a remedy for unsafe conditions need not await a tragic event."). Helling concerned exposure to tobacco smoke; other examples cited by the Court included exposure to the risk of infectious disease, unsafe drinking water, exposed wiring, deficient firefighting measures, and assault. Id. 509 U.S. at 33-34; see also Hill v. Marshall, 962 F.2d 1209, 1213-14 (6th cir. 1992)(risk of developing tuberculosis); Powell v. Lennon, 914 F.2d 1459, 1463 (11th cir. 1990)(exposure to asbestos); Johnson-El v. Schoemehl 878 F.2d 1043, 1045-55 (8th cir. 1989) (pesticides); Clark v. Moran, 710 F.2d 4, 9-11 (1st cir. 1983)(cancer-causing chemical).

Some recent Supreme Court decisions concerning prisoners' Eighth Amendment claims have emphasized physical harm, or the risk of it. The Court has held that unsafe conditions that "poses an unreasonable risk of serious damage to [a prisoners] future health" may violate the Eighth Amendment even if the damage has not yet occurred and may not affect every prisoner exposed to the condition." However, numerous decisions have held that conduct can violate the Eighth Amendment even if it does not inflict physical injury" or cause lasting or permanent harm." -- though the Prison Litigation Reform Act bars recovery of damages for mental or emotional injury in the absence of physical injury.

Prison officials are entitled to deference in their decision concerning order and security. However, there are limits; one court has held that it is unconstitutional to inflict "serious psychological pain" on inmates to serve "minor (correctional) concerns."

Williams V. Greifinger, 97 F.3d 699, 704-05 (2nd cir. 1996)(holding that treatment "otherwise.... impermissible under the Eighth Amendment" is not acceptable for behavior control purposes). Williams V. Coughlin, 875 F.Supp. 1004, 1013 (w.s.n.y. 1995) (holding two-day withholding of food for failure to return food tray could constitue disproportionate punishment where the prisoner had not engaged in conduct the rule was designed to curb).

In cases involving risks to health or safety, courts must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

In Eighth Amendment cases, courts inquire whether conditions, "alone or in combination,.... deprive inmates of the minimal civilized measure of life's necessities." Under this "totality of the circumstances" approach, "merely unpleasant conditions do not automatically become unconstitutional when you add them. Rather, conditions must have

"a mutually enforcing effect the produces the deprivation of a single, Identifiable human need" in order to become unconstitutional in combination. Examples of this "mutually enforcing effect" include "a low cell temperature at night combined with a failure to issue blankets" or restrictions on outdoor exercise combined with long lock-in times, Similary, courts are more likely to find crowding unconstitutional if it occurs in combination with long lock-in times or contributes to other dangerous or deteriorated conditions. Prisons can not "trade off" unconstitutional conditions under this theory. If one condition is cruel and unusual, the fact that other conditions are better will not save prison officials from Eighth Amendment Liability. Often, the length of time prisoners are subjected to an unpleasant condition plays an important part in determining whether it is cruel and unusual. But especially degrading or abusive conditions and unconstitional even if imposed for short periods of time.

Fmc Carswell as provided to this Court by the above styled motion along with the sworn affivaites from each prisoner proceeding in this lawsuit. The conditions and treatment by staff along with the total disregaurd for womens needs, lifes, and mental issues as told to this Court has violated not only each and every mother, daughter, sister, grandmother, wife, and aunt held inside the "tinderbox" of Fmc Carswell. Women went as far

as to attempt to kill themselfs to reach help
from the outside. FMCCarswell did not test 3 or months.
and when they had knowledge that a staff member
tested positive in the hospital unit, the warden continued
to have inmates from other housing units to go
into the infected unit to care for sick prisoners.
This action allowed COVID-19 to gain ground and
simply become an outbreak leaving every inmate
exposed for long periods of time forced to
catch COVID-19, completely unable to self-care
to social distance, to having hand soap, lack of
pads and tampon.... all while being degraded
and threatened by officers.

FMC Carswell refuses outside even though
the CDC says 30 mins to 90 mins in the sunlight
helps. These Plaintiff's have been locked in
and touched daily with malice and hate.
Contempt for those womens lives, needs, worth
and rights is proven Beyond any reason.

Tisher V. Koehler, 692 F.Supp. 1519, 1564
(S.D., N.Y., 1988)(unconstitional levels of violence
found although building seemed clean and in
good condition), aff'd. 902 F.2d. Cir. (990);
Fraizer V. Ward, 426 F.Supp. 1354, 1337, 1372
(N.D. N.Y. 1977)(strip searches and denial of
outdoor recreation found unconstitutional
although other cond conditions were adequte);
Michaud V. Sheriff of Essex County, 390
Mass. 523, 438 N.E.2d 702, 708 (Mass. 1983)

(failure to provide toilet facilities was unconstitutional regardless of the "cumulative condition of the jail").

See: Alexander V. Tippah County, 351 F.3d 626, 630-31 (3rd cir. 2003)(questioning "whether "deplorable" sanitary conditions imposed for a 24 hours violated the Eighth Amendment, citing cases); Dixson V. Godinez, 114 F.3d 640, 643 (7th cir. 1997)("A condition which might not ordinarly violate the Eighth Amendment may nonetheless do so if it persists over an extended period of time.");

As testimony given by these plaintiff's they have been refused clothing, hygine, tolitet paper, pads, and tampons during a world wide pandemic, FMC Carswell has surpassed cruel and unusal treatment in violation of their Eighth Amendment rights, FMC Carswell has violated their very human rights and from FMC Carswell's total lack and complete disregard for the silent killer of COVID-19 virus FMC Carswell did everything in their power to aide the spread of COVID-19 with the recklessness and proveable deplorable treatment and deficiencies in basic standards of human treatment.

Johnson V. Pelker, 891 F.2d 136, 139 (7th cir. 1989) (three days in a feces-smeared cell without running water and with no access to cleaning materials could violate the Eighth Amendment); LeReau V.

Manson, 651 F.2d 96,107-09 (2nd cir. 1981) (double-celling permitted for up to 30 days but use of floor mattresses forbidden for "any period of time").

Fmc Carswell Lt. Butler as shown by multiple testomys has a form of his own kind of punishment, which he strips women's mattresses away and all beding forcing her to lay on the cold metal bunk and this action is supported by Warden Carr, all staff, and Lt. Anothy. During this critical time of the pandemic cleaning supplies have been unreachable by all inmates that are housed in the main hospital building once they had suffered in their own housing units sick and after pealing with staff were tested and found positive for COVID-19 the team at Fmc Carswell deliberatly practiced the highest levels of Indifference and placed the inmates lives into futher risk and watched as women suffered.

The Subjective Component - Deliberate Indifference

In Eighth Amendment conditions cases, the plaintiff must prove that the defendants acted with "deliberate indifference." The deliberate indifference standard does not apply to cases involving the use of force; in those cases, the plaintiffs must show that the defendants acted "maliciously and sadistically."

Deliberate indifference in Eighth Amendment cases falls somewhere between mere negligence (carelessness) and actual malice



(intent to cause harm). That is it amounts to recklessness. Sometimes deliberate indifference is shown-directly by evidence of prison personal's bad motives or attitudes. However, The Supreme Court has held that a prison offical can be found reckless or deliberately indifferent if "the offical Knows of and disregards an excessive risk to inmate health or safety... This is the same standard of recklessness that is used in criminal law, and it's sometimes called the "subjective" approach to recklessness. If a prison officals Know that conditions are "objectively cruel" and fail to act to remedy them, they are deliberatly indifferent.

Warden Carr and the staff at Fmc Carswell did not inflict all of this cruelty and disreguard toward human life over any legitimate penological purposes, such as maintaining security and discipline. The security all the women inmates needed was from a unseen killer, a pandemic that without being able to self-care or protect these women started getting sick and many thought death was upon them, sadly many passed away after a long suffering.

But, the women have been told, "You are worth more to us dead than alive, the BOP has Life insurance on each one of you so we get paid if you die so make your choice!"

The Fmc Carswell Staff can never claim they were not aware of the pandemic and

the fact that prisons in their own right are known as "tinder boxes" for infections.

The whole world knew about Covid-19 and the dangers of this virus. All have outlets, the ncc, every single citizen and other countries have for months been fighting to find a way to live through this pandemic and many loved ones and patients have sadly not made it.

The fact that a condition or a risk was obvious is circumstantial evidence that will permit a judge or jury to conclude that a defendant did know about it, even if there is no direct evidence about what the defendant knew.

Farmer V. Brennan, 511 at U.S. 842-43; id at 857 ("the offical must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); See Hope V. Pelzer, 536 U.S. 730, 738, 122 S.Ct. 2508 (2002); Vinning-El V. Long, 482 F.3d 923, 924-25 (7th cir. 2007) (holding jury could infer that guards working in the area knew about grossly filthy cell conditions.) See Goka V. Bobbitt, 862 F.2d 646, 653 (7th cir. 1988); Wilson V. Sieter, 501 U.S. 294, 300, 111 S.Ct. 2321 (1991); Campbell V. Sikes, 169 F.3d 1353, 1372 (11th cir 1999) (dismissing medication discontinuation case because plaintiff's condition was not so obvious that knowledge could be inferred).

Medical Staff at Fmc Carswell along with unit team and counselors would not give any female

32

any regard when they would tell staff and warden that they or another lady was ill and needed to be tested. Until the complete recklessness and malice of the warden and his ordering inmates to a brown with covid and then sorting said inmate back to cause a massive deadly outbreak, fmc carswell told all inmates "no" testing would ever be done here. and bragged on how only two days had happened and "only" one death. One death of a 30 yr. woman with a child, that she never had the chance to tell her she loved her, hold her little hands or say goodbye because fmc carswell allowed her death with high fevers and once they finally took her to the ER she could not breathe and was placed on the ventilator and her unborn daughter was ripped from her mother's womb early, and the mother passed away. But, according to the staff at fmc carswell they have done a great job and it was only one death. That one was worth more than "just "that" one girl died"! However, later a staff member tested positive after infecting the fourth floor in the medical building causing the mass outbreak that warden carr had ordered not to get ready for. To this 19th day of July inmates are still wearing cloth made masks, which cdc says "Does no good against covid. 19"

But, staff is finally given medical cover alls, mask, booties, hair nets because their lives hold more

more worth then "jail inmates" or "those cows"
as Lt. Butler enjoys referring to the women inmates.
In his eyes, heart and mind and from his own
mouth, "It's bad enough, you all breathing!"
Over 300 witnesses to said act, see Exhibits, and
Tina Carswell has video if they do not misplace
said video from July 1, 2020 6:04 pm.
Regional offices know fully and advised inmates
families to tell their family member inside
Carswell to go straight to their cell when Lt.
Anthony comes inside their unit and do not
engage him. There is full knowledge of the
abuse.

and emotional level. We have some Jewish ladies in here that cry, "I feel like they are screaming at us, pushing us while lieing to us that we are going to a safer place .. all along we are being walked to the gas chambers, and fire towers, for a mass killing of the "sub class" (known as inmates - women).

Two ladies were taken July 23, 2020 out in wheel chairs because for 3 days they were so sick they couldn't walk on their own, other women had to hold them up. and take them to bathrooms, help them, showers ... Social distancing? We have no choice but to touch each other the staff will not aide us and did not call medical until one passed out, a 70 year lady named Joy

On the 24th Day of July, 2020... April whom is very ill and has a catsitype bag, is as I write this cring bent over in pain from her kindeys. medical refusing to see to her and the co stating, "your back hurts because of these matteress."

Staff is always dianosising us with zero medical opition. This is a federaly inditible offense. But, because they are officals inside the federal prison system, no one in the legal field will stop them. The lies that the outside world is spilled all in the name PR marketing to protect the image they ensure will be believed. They are not questioned because of their training, job titles, and our tittles as inmates.

mail (They won't bring the scales, certified stickers or the log book showing we signed to send, non medical personal calling the Medical Director and having inmates medical records and needs changed, merely because she doesn't like you, (Ms. Gardner)... we are put through all this and much more. Now, we have Covid-19 with the same staff that violates all our rights they tell us we do not have. On July 24th, 2020 at about 1:15pm, Warden Carr came in Housing unit 2 North to let us know that "No one will be tested here. We Know you are all positive and we will "Assume" at 14 days that you are now negitive." "You can not catch Covid 19 twice you will be fine, but no more testing will happen". The out cry from the women was so fearful and panicked that. Mrs. Lux started screaming, "Shut the HELL up, you will show your Warden respect when he is speaking!"

Ladies were cring and shaking, turning to hide in their rooms.

Dr. Jathem started to talking about, "You can not get COVID-19 again, I'm an MD, trust me the news is "fake News"!

This is our lives, but the officals here we are checks for housing us and our lives are going to go and come to no avil to them and we have done something that gives them the consent, power, justification to out and out lie to us. They assume that the women will not outcry to live, most of the time they are correct, but this is life or death and true suffering on a pshyical, mental,



Holding this class to attempting to go through the grievance + remdemy process must be found to be futile. The extraordinary + compelling reasons warrant that by this court §3582 and Grievances filed through an offical grievance produre are constitutionally protected, even though there is no constitutional requirement that prisons have a grievance system, or that they follow its proedures if they do have one.

This class should therefore not be held to having to show these types Filings.

## Retaliation for Speech

"The First Amendment Forbids prison officals from retaliation against prisoners for exercising the right to free speech." Farrow V. West, 320 F.3d 1235, 1248 (11th Cir. 2003); accord, Crawford-El V. Britton, 523 U.S. 574, 588 n.10, 118 S.Ct. 1584 (1988) ("The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right."); Hoskins V. Lenear, 395 F.3d 372, 375 (7th Cir. 2005) (per curiam) ("Prisoners are entitled to utilize available grievance procedures without threat of recrimination..."); Scott V. Coughlin, 344 F.3d 282, 287-88 (2d Cir. 2003) ("...Plaintiff's invol͏vement in filing claims against prison officals and helping others do so was protected activity, as it was an exercise of his rights to petition the government for redress of grievances under the First Amendment.")



This class action along with letters to Fox in Dallas, TX. have been refused by the mail room, unless I "Blake" would give packages to them to take unsealed, uncertified, without me signing the Log book and "trust" they would do it without searching the legal mail or media certified mail. It has taken three tries to put these into the legal mail and to certify each, because I would not allow that action, leaving myself and the class in a whole with zero protection.

My cell and lockers were distoryed in retaliation of tring to use my voice. Unconstitutional retaliation may be remedied by an injunction, even if the practices are not formally part of an official policy, or by an award of damages. Dannenberg v. Valadez, 338, F. 3d 1070, 1072 (9th Cir. 2003) (noting jury verdict of $6,500 compensatory and $2500 punitive damages for retaliation for assisting another prisoner with litigation; noting injunction requiring expungement of material related to disciplinary action); Walker v. Bain, 257 F. 3d 660, 663-64 (6th cir. 2001) (noting jury verdict for plaintiff whose legal papers were confiscated in retaliation for filing a grievances).

These are not the abnormal practices within the prisons, including FMC Carswell.
See Declaration Verifications provided to show that retaliation is common place. The question whether a particular action would deter a person of ordinary firmness is an objective one and does not depend on how a particular plaintiff reacts; the question is

whether the defendant's actions are capable of detering a person of ordinary firmness. Adverse action need not support a retaliation claim. Nor need it impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" as is required to support a claim of deprivation of liberty denying due process.

Sadly there are inmates to affraid to speak out against their abuse, pain, and suffering. The officals strongly use these inmates as "snitches" to agress upon any inmate who is tring to protest, cause change, help another fellow human being. Womens prisons are not known for violance and that is because most of the female inmates have suffered rape, beatings, and major emotional injuries. So the officals act as they are powerful and behind the gates ... they are infact all powerful. We are allowed to bleed through our clothing in front of everyone, so that officals can feel they have power and the whole time calling you sick. The public has a image of "inmates" that the Corp, Beast wan'ts the public to see. Big, Scary, worthless, gang members. Do the men's prisons have more violence then the womans? the Facts are yes they do. The women's prisons are full of broken, scared, women that have to try to become some new image in here. When you are abused and made to feel like trash every day by the

"proffessionals" "officials" that are placed to protect you... there becomes that moment in time that you have a new understanding to why and what is being done to you.

You understand... "This IS Justice TO THEM".

The Right to Assistance in Bringing Legal Claim. The Supreme Court held in Bounds V. Smith, that prison authorities have an affirmative doligation to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. Bounds V. Smith, 430 U.S. 817, 828, 97 U.S. 1491 (1977)(emphasis supplied).

However, in Lewis V. Casey, the Supreme Court imposed several restrictions on prisoners' ability to enforce Bounds V. Smith obligations. Lewis held that a prisoner complaining of a Bounds violation must show that:

①he was, or is, suffering "actual injury" by being "frustrated" or "impeded"

② in bringing a non-frivolous claim

③ about his criminal conviction or sentence or conditions of his confinement.

With this said, Never has any staff helped a inmate in law or provided one once of product to aide the construction of any legal papers. One point to that is this had to be written in penical not pen. Second, with it up to a staff



what is non-frivolous, no inmate would get any legal motion before any court, which in FACT is what is done. Legal mail is never everyday, wants to leave your sight with said mail. Does not have log book to sign you sent off legal mail most of the time and does not bring certified stickers most of the time. Some staff has stated "If you do not certify it, they open it and sometimes it never makes the mail."

Courts did not send us class members to be tourchured by our punishers. With a pandemic going on and the added amount of suffering and threats of cruelty along with lack of food and hygine and no sunshine, or exercise. that is what the Courts are doing to us "Trochure".

As a layperson in law, I am sure there are problems in this class Action, as I am not trained nor do I have access to help or a law liberty (other than a computer for ten min. a day with no copies or prints allowed. Excuse the misstates found, I tried. Someone has to and this class of female members will speak out for their lives.

If the prisons do not have to answer for their misconducts and illegal actions then we as a country need to rename our prisons to "The Trochure Halls" where you do not matter anymore. Growing up we learn "Actions speak Louder than words" America, World... Remember that as the highly trained PR personal and BOP leaders speak out about this



Those words are only for your ears,.. to rest your minds ... easy your heart to think and understand they are the "Good Guys", Look toward their actions as you have 56 womens statements of abuse and see if you are still able to decide for yourself how you feel toward us women. Or, have you become uncaring and numb to us because they have done such a amazing job at using their "words"?

Our Rights are Independently Protected by the Constitution. See Sandin V. Conner, 515 U.S. 472, 477-78, 115 S.Ct. 2293 (1995)(citing Wolf V. McDonnell 418 U.S. 539, 557-58 (1974)).

Sandin says that some prison conditions "exceed the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." Sandin, 515 U.S. at 484. That is, they are "so severe in kind or degree (or so removed from the original terms of confinement) that they amount to deprivations of liberty" regardless of the terms of state law. Sandin, 515 U.S. at 497 (Breyer, J. dissenting. For example, the Supreme Court has said that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual. Therefore prisoners have a liberty interest arising from the Constitution in not being classified and treated as mentally ill, and the state has to provide due process protections

before committing a prisoner to a mental hospital. Vitel V. Jones, 445 U.S. 480, 491·94, 100 S. Ct. 1245 (1980).

Class members when sentenced never saw that their sentences could possibelty of contracting a new virus that the is no cure and would be forced to become injected with the pandemic virus. We have watched some of the most horrorfied actions of cruelty to disregard by FMC defendant's that a person has two choice (1)STAND UP and take your muzzle off to be heard or (2)Lay on your hard bed and inbrace their forms of Justice. Seeing women fight for air and food, and headache medication,, to be laughed at. Some ladies did not make it, now their families will never tell them that they are realy loved and not to give up.

One example is a lady slice her wrist all the way up to kill herself or they would finaly get her out to the hospital for help. In all fairness and openness one Lt. (Rodurize) was the only person who would hold her gashed open wounds spilling massive blood all over him in the meantime. He is the one here who does not leave us to suffer.

The staff said the next day, "Made she though that was a faster way to die then COVID-19."



The Class members MUST inform this Court
and readers that the class members are Threatened
and Intimidated by prison staff, into NOT following
the Grievance Procedure. Courts have held that
threats or other intimidating conduct may make
administrative remedies in general, or the usual
grievance remedy, in particular, unavailable to a
prisoner, both before Woodford and afterward.
    See Hemphill v. New York., 380 F.3d 680, 686-90
(2d. Cir. 2004); accord, Kaba v. Stepp, 458 F.3d
678, 684-86 (7th Cir. 2006)(adopting Hemphill analysis
after Woodford); see cases cited in §D.3 of the
chapter, nn. 325-326.
    There is the strongest hate when asked for grievanc
forms at fmc Carswell. We are shookdown when
we do, Taken to the Still for "investigation"
there is never a investigation - they merely get
rid of you. Shos are given to reflect that that
inmate has done something wrong and therefore
their score goes up, causing the loss of many
thing including going to camp ... and etc.
    In respect to this Class Action the class
for solid and proven reasons know, it will be made
to suffer greatly for speaking out to save theirs and
the lives of other inmates. Because suffering out of
Retaliation for Speech, we the class ask for the
Injuction asked for and for the Court to check in
with us that we do not disappear (it happens).
    "The First Amendment forbids prison officals

from retaliating against prisoners for exercising the right to freedom of speech.

Farrow V. West, 320 F.3d 1235, 1248 (11th cir. 2003); accord, Crawford-El V. Britten, 523 U.S. 574, 588 n.10, 118 S.ct. 1584 (1998) ("The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right".); Hoskins V. Lenear, 395 F.3d 372, 375 (7th cir. 2005) (per curiam ("Prisoners are entitled to utilize available grievance procedures without threat of recrimination...); Pratt V. Rowland, 770 F. Supp. 1399, 1406 (N.D.Cal. 1991)(granting injunction).

FMC Carswell will never admit to retaliation but it is common place and traps the victim to their threats and violations as helpless because the voices that need to be heard can not reach over the Big Business of the BOP and the power hungry and Fed CO's and Lt.'s, staff and Warden. It is the Best Bulling Grounds ever made, there is no one to run to because each staff member protects the other.

## Conclusion

The motion and complaints before your Court are a pressing matter of lives and the class members humbley request to be granted on all points and quitified as

a class action and appoint of counsel rewarded, and the requested injunctions rewarded.

Our Country needs to stand up when a person is subjected to death due to recklessness disregard, and deliberate indifference every day, and Representives Faith Blake, Gibson and every named class member await your ruling with every second, as our lives change inside these overrun Covid-19 housing units.

Humbley,

Faith M. Blake 730553279

Date: July 25th of 2020

United States District Court
District of Texas
Fort Worth, Divison

Representative Parties,

1) Faith Blake 730532179
2) LaToysha Gibson
3) Tiffany Snodgrass
4) Delisa Williams
5) Tracie Cartwright
6) Crystal Hamann
7) Megan Scott
8) Ariel Bishop
9) Tanya Torrence
10) Clara BorBear
11) Genesis Gonzalez
12) Juliana Laude
13) Windy Panzo
14) Samantha Forsythe
15) Andrea Brooks
16) Carrie Allred
17) Angela Reynolds
18) Victoria Martinez
19) Mindy Casas
20) Nikki Graham
21) Anika Folsom
22) Angela Cupit

22) Cynthia Baxter
23) Villiscia Thomas
24) Stephanie Walker
25) Georgia Gregg
26) Dakota Garmany
27) Desiree Wade
28) Laura Shauger
29) Wendy Espinoza
30) Tiffany Mankin
31) Barbara Connehan
32) Shelly Mixson
33) Amy Tedder
34) Laci Landers
32) Brandi Moore
33) Gloria Beltran
34) Mia Mitchell
35) Raneem Hawani-Martinez
36) Kerri Keith
37) Christina Williams
38) Chrystal Larcade
39) Maria Rendon
40) Jessica Chronister

41) Jessica Holl
42) Perla Cruz
43) Peggy Chaffin
44) Kendra Ward
45) Davi Bailey
46) Shana Castillo
47) Sarah Alred
48) Alexis DuMarce
49) Jennifer Barela
50) Jennifer Gutridge
51) Lacey Moore
52) Tesa Keith
53) Erika MiJarez
54) Carolina Medellin
55) Shawna Enloe

56) Amy Robertson
57) Candice Klein
58) Yvette Avila
59) Eugenia Bowland
60) Crystal Thomas
61) Kristina Koehn
62) Rose Myers
63) Laura Hernandez
64) Ashley Vandenburg
65) Veronica Valenzuela
66) Christina Juarez
67) Maranda Fournier
68) Tara Childress

Defendants, named in Class Action,
1) Warden Carr
2) Lt. Anothny
3) Lt. Butler
4) Mrs. Cole-Rowls
5) Mrs. Q. Scott
6) A.W. Compos
7) Officer Friese
8) Dr. Sowdi
9) Medical Director, Dr. Langcom
10) Mrs. Lux

Dear District Court,

We are not lawyers and are not allowed any forms or any aide to build this Class Action but we are in need speedingly.

This has been put together carefully to the best we could and while sick.

Please forgive if you don't like the long list of of that come forward as a Class Action

We simply did not know of any other way to format that.

Hope you're safe and understand... Pens were not able to be gotten until July 28th 2020, penical is what we had and we took time to rewrite it a second time in penical so there was a copy. We are not permitted to make any copies.

Thank you,

Class Members
FMC of Carswell

July 28th, 2020



Faith Blake 78853279
Federal Medical Center, Carswell
P.O. Box 27137
Ft. Worth, Tx. 76127



JUN -- 2020
10:40 NW

U.S. District Court,
501 West 10th St,
Room #310
Fort Worth, Tx. 76102

Attn: Clerk of This
Court and
Judge O'Connor

CERTIFIED MAIL

7019 2280 0002 1316 2987

Package 1 of 4

Legal Mail





Package 3 of 4
Legal Mail

Fajih Blake 2v
473353 279
Federal Medical Center, Carswell
P.O. Box 27137
Ft. worth, Tx. 76127

2020
10:40
MW

CERTIFIED MAIL

7019 0140 0000 0249 0247

U.S. District Court
501 West 10th Street
Room #310
Fort worth, Tx 76102

Attn:
Clerk of this
Court
and Judge
O'Connor

Faith Blake 73053279
Federal Medical Center, carswell
P.O. Box 27137
Ft. Worth, Tx. 76127

postage 4ay4
special mail

RECEIVED
AUG 3 2020
10:40 MW
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS.

CERTIFIED MAIL
7009 1680 0002 0420 9254

U.S. District Court
501 West Tenth St.
Room # 310
Fort Worth, Tx. 76102
(Attn.) Clerk of This Court
and Judge O'Conner







①

Order To Show Cause and
Temporary Restraing Order

Upon the support in declaration of the
plaintiff's and the accompanying memorandum
of law it is Ordered that defendant's Warden Carr,
Mrs. Lux, Asst. Warden Campos, Lt. Anthony, Lt. Butler,
Ms. Q. Scott, Ms. Cole-Rawls, Ms. Gardner, Mr. Dr.
Langtham Medical Dir., Mr. Friese, Mr. Jowdy MD.
Mr. Surrel nurse, Ms. Shelby "officer" show cause
in room ____ of the United States Courthouse,
1100 Commerce Street Dallas, Texas. 75 242. on
the day of, ___ at ___ o'clock, way a preliminary
injunction should not issue pursuant to Rule
65(a), Fed(a), Fed. R. Civ. P., enjoining the said
defendants, their successors in office, agents,
and employees all other persons acting in concern
and participation with them, to provide all the
covered protections owed the class members
under Eighth Amendment rights as covered
in the complaint that will restore and
maintain the full function of their Constitutional
rights and their rights of life and liberty.

②

IT IS FURTHER ORDERED that effective immediatly, and pending the hearing the determination of this matter, defendant's as named above in this motion shall arrange for the plaintiff's "all named class members" to be provided staff members not named in the Class Action Claim and that zero Retalition actions will be commented upon any class member in order to threaten, witness tamper, attempt to leave lawsuit for promises, placement into the SHU to mute all contact efforts to bring the violations to their Constitual rights to light.

IT IS FURTHER ORDERED that this order to show cause, and all other papers attached to this application, shall be served on defendant's as named in this above styled motion by, _____ 2020, and the United States Marshals is hereby directed to effetuate such service.

_____
United States District
Judge

Date
_____